In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3738

ESTEBAN MONTAÑO, *et al.*,

*Plaintiffs-Appellees,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 8035—**John C. O'Meara**,[*] *Judge.*

ARGUED JUNE 4, 2003—DECIDED JULY 13, 2004

Before RIPPLE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Behind a knotty set of questions relating to the coordination of parallel suits in state and federal court lies an unfortunate incident on the streets of Chicago, during which a group of Mexican-Americans were savagely beaten with metal flashlights, fists, and feet by some Chicago police officers. They were arrested and, after further abuse, released; ultimately all criminal charges against them were dismissed. The victims

---

[*] Of the Eastern District of Michigan, sitting by designation.

(to whom we refer collectively as Montaño, after the lead plaintiff Esteban Montaño) sued the City and the officers in federal court on both federal and state law theories.

Rather than deciding the whole case, the district court chose to keep the federal-law claims and to sever the supplemental state claims and dismiss them without prejudice. Faced with this turn of events, Montaño re-filed the state claims in state court. The district court then resolved all but two of the federal claims in favor of the City defendants. At that point, matters took a highly unusual turn. Acting on its own initiative, the court first stayed the remaining federal claims pending the resolution of the parallel state-court action, and then it converted the stay into a dismissal without prejudice pending resolution of the state-court action.

Believing that it has effectively lost its right to have a federal forum resolve (at a minimum) the federal claims, the City has appealed from the dismissal of the remaining federal claims. It wants us to undo the mess and reinstate the action in the federal court. Montaño responds that the City is too late—it should in his opinion have filed immediate appeals from the earlier (interlocutory) orders. As we asked at oral argument, can we put this Humpty Dumpty-like case back together again? We think there is a way, and so we reverse and remand for further proceedings.

# I

On September 14, 1997, festivities commemorating Mexican Independence Day (which actually falls on September 16) were taking place in the Little Village section of Chicago. Esteban Montaño and several of his friends—including Ricardo Ruiz, Julio Perales, and Yesenia and David Mendez—were among the celebrants when they were set upon by several officers of the City of Chicago Police Department. The incident began when Officers

Atilana and LaFrancis, who claimed to be responding to the throwing of a beer bottle at their squad car, confronted Montaño, Ruiz, and Perales at a street corner. During the ensuing pat-down for weapons, Officer Atilana allegedly punched Montaño in the groin, and a scuffle ensued. Officers Toolis and Kusar arrived on the scene to provide backup, and a significant amount of force was applied to Montaño, including blows to his head and back with metal flashlights, as well as choking and kicking.

When Ruiz and Perales protested Montaño's treatment, officers arrested them, too, twice knocking Ruiz to the ground. By now a group of Montaño's friends had assembled, as well as additional police back-up, including Officers Hopkins, Skol, Maresso, Tamez, and Zeleswki. When David Mendez attempted to leave the scene, he warned the officers, "I'll see you on Channel 5 News." An officer arrested him, tackling him and repeatedly kicking him in the ribs and stepping on his face in the process. Officer Zeleswki arrested Yesenia Mendez as well when she asked why her husband (David) and brother (Montaño) had been arrested.

The arrestees were transported to the Tenth District police station. Montaño suffered more beatings at the station, and all of the plaintiffs were subjected to a variety of racial epithets and other verbal abuse. Montaño, Perales, and Ruiz were strip-searched. Yesenia Mendez was later transferred to the Eleventh District station, where she, too, was strip-searched. All told, Montaño and his friends were held for some four hours. Although Montaño, Perales, and Ruiz needed medical treatment as a result of their confrontation with police, none was provided. All the plaintiffs were charged with various combinations of disorderly conduct, drinking on a public way, and resisting arrest, and then released. Some time later, all charges were dropped.

Two months later, on November 19, 1997, Montaño filed a nine-count complaint against the City of Chicago and

sixteen individual defendants. Five of the counts advanced federal-law claims under 42 U.S.C. §§ 1983 and 1985 (excessive force, false arrest, malicious prosecution, failure to intervene, and conspiracy), and four raised state-law claims (battery, false arrest, malicious prosecution, and intentional infliction of emotional distress). Eight out of the nine counts raised claims against the individual officers. The remaining count was a federal claim against the City based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978). On September 25, 2001, after the completion of discovery, the district court granted summary judgment to the City on some of the counts against the individual officers, and, acting on its own initiative, decided to relinquish jurisdiction over the state-law claims. On October 10, 2001, Montaño filed the dismissed state-law claims in Illinois state court.

The federal-law claims proceeded to trial in the district court. On November 15, 2001, at the conclusion of the presentation of Montaño's case-in-chief, the district court granted judgment as a matter of law in favor of the officers on all but two of the remaining counts. At this point, only Montaño's individual claim against Officer Lopez for excessive force and Yesenia Mendez's claim against Officer Lambert, alleging an illegal strip search remained to be decided. The district court declared a mistrial on those two counts. The court also noted its displeasure with the plaintiffs and threatened sanctions, stating its belief that the plaintiffs were inspired to bring their suit by the Rodney King incident, rather than a desire to obtain compensation for their injuries.

On November 27, 2001, before the two remaining claims could be retried, the court denied the City's Rule 59 motion to reconsider its September 25 dismissal of the state-law claims. The district court, once again acting on its own, then entered an order staying the federal litigation pending the resolution of the state-court action. This order was not

accompanied by a memorandum and did not otherwise state the grounds on which the stay was to be entered or the form of abstention that the court was invoking.

Montaño filed an interlocutory appeal on December 18, 2001, challenging the district court's grant of summary judgment to various of the defendants in the September 25 order. The appeal also sought a writ of mandamus to overturn various discovery orders. The City filed a cross-appeal on January 2, 2002, seeking review of the September 25 order refusing to retain supplemental jurisdiction over the state-law claims, and also that portion of the November 27 order that stayed the federal action pending resolution of the state-court proceedings. A motions panel of this court disposed of the appeal by order, finding that Montaño had given insufficient notice of his intent to appeal that part of the November 27 order staying the federal action, and that his appeal of the entry of summary judgment in favor of some of defendants was otherwise premature. *Montaño v. City of Chicago*, Nos. 01-4284 & 02-1034, slip op. at 2 (7th Cir. Mar. 20, 2002). Finding Montaño's appeal improper, we also declined jurisdiction over the City's cross-appeal, determining it was time-barred under *Abbs v. Sullivan*, 963 F.2d 918 (7th Cir. 1992), which holds that where a party filing the first appeal does not have a right to appeal, any cross-appeal is time-barred if the cross-appellant does not file her notice of appeal within the prescribed time period. *Id.* at 925.

On March 19, 2002, the district court entered a further order, again without any warning to the parties or explanation, dismissing the federal case without prejudice pending the outcome of the state-court proceedings. Two weeks later (within ten business days), on March 29, 2002, the City filed a motion to vacate three separate orders: the September 25 order declining to retain supplemental jurisdiction over the state-law counts, the November 27 order staying the federal litigation, and the March 19 order dismissing

the federal-law counts without prejudice. The district court denied this motion by order dated September 30, 2002. The City now appeals.

## II

Our first order of business concerns appellate jurisdiction. The City asks us to vacate the three different orders of the district court just identified. Montaño responds that we lack jurisdiction to review either of the earlier two orders because of the City's failure to file timely appeals as to each. With respect to the September 25 order, Montaño notes that the City filed a motion for reconsideration on October 1, 2001. That motion was denied on October 24, 2001. On November 2, 2001, the City filed a second motion for reconsideration, which the district court denied at the outset of trial, on November 7, 2001. In Montaño's view, November 7 is the critical date for a challenge of the September 25 order; the City had 30 days from that point to file a notice of appeal, but it failed to do so. This, Montaño contends, constitutes waiver and divests this court of appellate jurisdiction to review the September 25 order.

Montaño's position reflects a fundamental misunderstanding of the nature of interlocutory appeals, as any effort to appeal the September 25 order surely would have been. The failure to take an interlocutory appeal does not necessarily preclude a later appeal: a party can always bring those claims as part of an appeal of a final judgment. *Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, Local 20*, 208 F.3d 610, 614 (7th Cir. 2000). Thus, if the March 19 order qualifies as a final judgment under 28 U.S.C. § 1291, it is a straightforward matter to find that the City could raise the propriety of the September 25 order in the same appeal.

Although this record is not as clear as we would have wished, because of the district court's apparent expectation that the parties might return to federal court after

the state court proceedings are concluded, it nevertheless might support a finding that the March 19 order was indeed a *de facto* final judgment. As we have mentioned, the March 19 order dismisses the remaining two federal claims "without prejudice." In the usual case, an order dismissing a complaint without prejudice is not final, and is therefore not appealable under 28 U.S.C. § 1291, because the plaintiff is free to amend her pleading and continue the litigation. See, *e.g.*, *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *Strong v. David*, 297 F.3d 646, 648 (7th Cir. 2002); *Furnace v. Bd. of Trs. of S. Ill. Univ.*, 218 F.3d 666, 669 (7th Cir. 2000). There are, however, situations in which an order nominally dismissing a case without prejudice is in fact final because an amendment would be unavailing. See, *e.g.*, *Hoskins*, 320 F.3d at 763; *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001); *United States v. City of Milwaukee*, 144 F.3d 524, 528 n.7 (7th Cir. 1998). It seems likely that no amendment would change things in this case, and given normal rules of claim and issue preclusion, see 28 U.S.C. § 1738, there might be nothing meaningful left that could be litigated after the state court is finished. If that were the case, the March 19 order and all orders entered before that date would be appealable under § 1291.

The possibility of additional proceedings in federal court is real enough, however (in large part because the district court so explicitly anticipated them), that we think it prudent to decide in the alternative whether appellate jurisdiction exists if the March 19 order is better viewed as nonfinal. The answer, we are confident, is yes, because in substance the March 19 order represents a decision by the federal court to abstain, and it otherwise fits the description of "collateral orders," as we explain below. Either way—as an abstention order or as a collateral order— immediate appellate review of the March 19 order itself is available, for the reasons we now explain.

Putting labels to one side, the March 19 order is best understood as an order of abstention, implemented through dismissal rather than a stay. As such, it is independently appealable under the rule announced in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996). *Id.* at 714; see also *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 12-13 (1983); *Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1267 (7th Cir. 1997). *Quackenbush* represents a special application of the general "collateral order" theory, under which certain orders can be reviewed as "final" judgments because they effectively end the litigation in a particular respect. Even if the March 19 order is seen as something other than an abstention ruling (although we confess it is hard to see why it should be), appellate jurisdiction would be proper under the general collateral order rule set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

The collateral order doctrine permits an appeal from a non-final judgment where the issues raised are "'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *United States v. Thompson*, 814 F.2d 1472, 1475 (7th Cir. 1987) (quoting *Cohen*, 337 U.S. at 546). The requirements for appealing collateral orders are set out in *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978). The order must: (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Id.* at 468-69 (citing *Abney v. United States*, 431 U.S. 651, 658 (1977); *United States v. MacDonald*, 435 U.S. 850, 855 (1978)).

The district court's March 19 dismissal meets these criteria. It is in no sense tentative: the district court entered a one-sentence order that dismissed without prejudice the federal-law claims pending resolution of the state court

proceedings. Compare *Microsoftware Computer Sys., Inc. v. Ontel Corp.*, 686 F.2d 531, 534 (7th Cir. 1982) (stay order not sufficiently "conclusive" because the district court "is free to reconsider its denial of the stay throughout the course of the litigation"), *overruled on other grounds*, *Gulf Stream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988). Moreover, particularly in light of the total absence of explanation from the district court, there is nothing in the record to suggest that the order is subject to any conditions that might be satisfied. It appears to us that further consideration by the district court of the ruling was out of the question. See *Moses H. Cone*, 460 U.S. at 12-13; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1118 (7th Cir. 1979).

The other requirements of the collateral order doctrine are met as well. The district court's March 19 order resolves issues that are capable of review without extensive examination of the underlying merits of the case. Indeed, a dismissal without prejudice during the pendency of parallel state-court proceedings explicitly defers all merits consideration in the federal-court proceeding. Further, because judgment in the parallel state-court proceeding may have preclusive effect as to the federal-law claims, see *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980); *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003), the district court's order will be effectively unreviewable on appeal should the state court proceed to judgment. *Moses H. Cone*, 460 U.S. at 12; *In re Gen. Motors*, 594 F.2d at 1121. Thus, considered either as an abstention order or as a straightforward dismissal, we conclude that the March 19 order is appealable as a collateral order.

With jurisdiction over the appeal from the March 19 order secure, the only remaining question is whether we may also review the earlier two orders the City is trying to appeal. We can, if the doctrine of pendent appellate jurisdiction would support review of either or both of those orders. That

doctrine allows a court of appeals "to review an otherwise unappealable interlocutory order if it is inextricably intertwined with an appealable one." *Jones v. InfoCure, Corp.*, 310 F.3d 529, 536 (7th Cir. 2002) (noting that despite the Supreme Court's expression of doubt about pendent appellate jurisdiction in *Swint v. Chambers County Commission*, 514 U.S. 35, 43-51 (1995), the Court itself relied on this theory in the later case of *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997)); see also *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001). In its usual guise, pendent appellate jurisdiction may be invoked "only if 'there are compelling reasons for not deferring the appeal of the former order to the end of the lawsuit.'" *United States for Use of Valders Stone & Marble, Inc. v. C-Way Constr. Co.*, 909 F.2d 259, 262 (7th Cir. 1990) (quoting *People of State of Ill. ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir. 1988)); see also *Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 497 n.2 (7th Cir. 1993). As we have noted, "[a]ny laxer approach would allow the doctrine of pendent appellate jurisdiction to swallow up the final-judgment rule." *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir. 1988); see also *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir. 1989). We consider the two remaining orders in light of these principles.

With respect to the September 25 order, we conclude that pendent appellate jurisdiction does exist and should be exercised here. Montaño claims only that the district court's September 25 order declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) was immediately appealable, but he cites no authority for that proposition and it is not dispositive in any event. It is true that we have found in the past that remands of removed cases that dispose of all remaining claims and that rest on the authority of 28 U.S.C. § 1367(c), rather than 28 U.S.C. § 1447(c), are appealable final judgments. See, *e.g.*, *Miller*

*Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 727 n.9 (7th Cir. 2001); see also *Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 598-99 (8th Cir. 2002); *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001); *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 159 (3d Cir. 1999). But, most importantly, this case did not reach the federal court through the device of removal. Furthermore, the removal cases say nothing about whether remand decisions under § 1367(c) can be appealed *before* the federal claims are resolved. To that extent, they merely follow the well-settled rule that an appealable final judgment under 28 U.S.C. § 1291 must put the litigation to an end, leaving nothing for the district court to do but execute the judgment. See, *e.g.*, *Coopers & Lybrand*, 437 U.S. at 467. This case is totally different. Here the district court's September 25 decision not to retain supplemental jurisdiction over the state-law claims left intact Montaño's federal-law claims and so was not final in any meaningful sense of the term. Thus, the September 25 order was an otherwise unappealable interlocutory order.

Additionally, we must evaluate the relation between the unappealable order(s) and the appealable order—how "entwined" are they? This requires more than a close link between the two: "it must be practically indispensable that we address the merits of the unappealable order in order to resolve the properly-taken appeal." *Valders Stone & Marble*, 909 F.2d at 262. This is such a case-specific question that we find earlier decisions to be of limited utility in answering it here. Because it affects our jurisdiction, it is one that we must answer for ourselves, based on our independent review of the record and the district court's rulings.

We are satisfied, based on that review, that the September 25 and March 19 orders are sufficiently woven together to justify invocation of pendent appellate jurisdiction. This is so even though the earlier dismissal of the state-law claims was not a perfect but-for cause of the court's later decision to dismiss without prejudice the fed-

eral-law claims. A district court may abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in deference to parallel state-court proceedings whether or not state-law claims remain in the federal action. To that extent, the September 25 order surrendering jurisdiction over the state-law claims did not necessarily lead to the district court's subsequent entry of a stay and then dismissal. Nonetheless, we recently had occasion to emphasize how sparingly the *Colorado River* doctrine should be used, see *AXA Corporate Solutions v. Underwriters Reins.*, 347 F.3d 272, 278 (7th Cir. 2003), and that lesson applies with even greater force here. The plaintiffs had not yet even filed suit in state court before the district court's refusal to exercise its jurisdiction. It seems plain that the September 25 order catalyzed the parallel state-court proceeding on which the court later relied to justify its orders first staying and then dismissing the federal-law claims. Furthermore, it is clear that only one constitutional "case" is present here, even though the Montaño parties have a number of theories supporting their claim. Had this been a case that reached federal court through removal, it is doubtful that the court would have had the authority to remand only the state claims, because they are not "separate and independent." See 28 U.S.C. § 1441(c). The City has therefore satisfied all three of the requirements necessary to establish pendent appellate jurisdiction over the September 25 order, which we conclude is properly before us along with the March 19 order.

Montaño also urges us to reject the City's effort to challenge the November 27 order in this appeal. Once again, he rests primarily on the argument that the City filed an untimely notice of appeal of the November 27 order and so has waived its right to appeal that order. As we noted earlier, the November 27 order awarded summary judgment to some of the defendants and stayed the federal proceedings pending the resolution of matters in the parallel state-court action. Montaño attempted to appeal the

adverse summary judgment rulings, and the City cross-appealed challenging the stay order. We dismissed the appeal for want of jurisdiction on March 20, 2002, concluding that *Montaño* had not designated the part of the district court's order staying the federal action in his notice of appeal, as required by FED. R. APP. P. 3(c), and that his efforts to obtain review of the district court's entry of summary judgment were "otherwise premature." *Montaño*, Nos. 01-4284 & 02-1034, slip op. at 2. The City's cross-appeal of the stay order was dismissed as untimely under the principle that a finding that an appellant's notice of appeal is invalid will also render invalid a cross-appeal that was not filed within the 30-day period specified by FED. R. APP. P. 4(a)(1)(A). See *Abbs*, 963 F.3d at 925.

Montaño now argues that, based on a strict reading of *Abbs* and the fact that this court has already once declared that the City's attempt to challenge the November 27 stay was time-barred, the City has waived its right to appeal that order. The current problem with appellate jurisdiction, however, has nothing to do with either the law of the case or the timing of the City's appeal this time around. It is instead the fact that the district court's March 19 order mooted the November 27 order by converting the stay into a dismissal without prejudice. The stay entered in the November 27 order now has no continuing force in this case. We therefore will not offer any opinion about the November 27 order, except insofar as it is relevant to the March 19 order that is properly before us.

## III

We turn at last to the merits. We take up first the district court's September 25 order declining to exercise its supplemental jurisdiction over the state-law claims. We review the district court's refusal to exercise supplemental jurisdiction over the state-law claims for an abuse of discretion. *Groce*

*v. Eli Lilly Co.*, 193 F.3d 496, 499-500 (7th Cir. 1999).

The rules for a district court's exercise of supplemental jurisdiction are set forth at 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(c) sets forth the circumstances under which a district court may decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The first problem—practically a fatal one for abuse-of-discretion review—is that we have no idea why the district court decided to dismiss these claims, because it offered no explanation. Nothing on this record suggests that it was for one of the four reasons recognized in § 1367(c). None of the garden-variety tort claims Montaño and his friends asserted raises novel or complex issues of state law. Nor do the state-law claims predominate over the federal-law claims. Prior

to the November 27 and March 19 orders staying and then dismissing without prejudice the federal-law claims, the district court had not dismissed all claims over which it had original federal question jurisdiction. Finally, Montaño cannot point to any compelling rationale that might salvage the total absence of the other three factors. That analysis usually involves consideration of "'the values of judicial economy, convenience, fairness, and comity,'" see *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)), but it is unclear how any of those values were served by the district court's refusal to exercise supplemental jurisdiction at that stage in the litigation. Its action virtually compelled the plaintiffs to bring a duplicative state-court action at the same time the federal claims were proceeding in the district court. Had they not done so, they faced the risk of losing those claims forever on statute-of-limitations grounds. In light of this fact, the district court's decision was certain to produce more rather than less overall litigation, and a greater rather than a reduced strain on comity and judicial resources. Though our review of decisions under § 1367(c) is deferential, we conclude that the district court's September 25 order refusing to exercise supplemental jurisdiction over the state-law claims crossed over the line and amounted to an abuse of discretion.

The March 19 dismissal without prejudice is just as flawed. The parties appear to agree that the district court's outright dismissal of the federal claims was an abuse of discretion, and we join them in that assessment. While the Supreme Court has expressly reserved the question, *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 570 n.21 (1983), this court has repeatedly noted that the appropriate procedural mechanism when deferring to a parallel state-court proceeding is a stay, not a dismissal. See *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002); *Rosser v. Chrysler Corp.*, 864 F.2d

1299, 1308 (7th Cir. 1988); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 698 (7th Cir. 1985); *Ohio River Co. v. Carrillo*, 754 F.2d 236, 238 (7th Cir. 1985); *Bd. of Educ. v. Bosworth*, 713 F.2d 1316, 1322 (7th Cir. 1983); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717-18 (7th Cir. 1982). And while the usual course has been to remand with instructions to enter a stay rather than a dismissal, see, *e.g.*, *Lumen*, 780 F.2d at 698, in light of the fact that we are also vacating the September 25 order refusing to retain supplemental jurisdiction over the state-law claims, there is no ground that would support such a stay. The proper course is to wipe the slate clean by vacating both the September 25 and the March 19 orders.

## IV

We VACATE the September 25 and March 19 orders and REMAND to the district court for further proceedings consistent with this opinion. Circuit Rule 36 shall apply on remand.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*