**HENCO, INC., Plaintiff–Appellee,**

v.

**Jeffrey C. BROWN,**
**Defendant–Appellant,**

**and**

**Jerry Daniels, d/b/a Custom**
**Services, Defendant.**

No. 89–2884.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1989.

Decided June 7, 1990.

Frederick F. Eichhorn, Jr., Eichhorn, Eichhorn & Link, Hammond, Ind., John E. Hubbard, Jeff A. Anderson, Kutak, Rock & Campbell, Omaha, Neb., for plaintiff-appellee.

Saul I. Ruman, David M. Hamacher, William H. Tobin, Ruman, Clements & Tobin, Hammond, Ind., Stephen R. Snyder, Beckman, Lawson, Sandler, Snyder & Bederoff, Syracuse, Ind., for defendant-appellant.

Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.

WOOD, Jr., Circuit Judge.

Defendant–Appellant Jeffrey C. Brown, like the archetypal salesman Willie Loman, rode on a smile and a shoeshine.[1] Brown, however, was so successful in selling his employer's products that it named him "rookie of the year" and implored him to reveal the secrets of his success to its entire sales force. Brown's employer, Princeton Corporation, produced or purchased items and services that nonprofit organizations such as schools, parent-teacher associations, and booster clubs offer when conducting door-to-door sales campaigns to raise money. Brown was humbled, however, when his employer was ac-

quired by a competitor, Henco, Inc. ("Henco"), that purportedly began providing him with inferior products that drew complaints from his customers. Brown's plaintive customers assailed him with allegations that his once irreproachable line of goods had been supplanted with soapy fudge, stale cookies, and cheap and broken gimcracks. The customers began demanding assurances from Brown that his company would refrain from delivering shoddy merchandise and providing unreliable service. After communicating this sea of troubles to his supervisors and allegedly failing to receive any guarantee that they would remedy the problems, Brown resigned on January 25, 1989, and became a salesman for Jerry Daniels, d/b/a Custom Services ("Custom Services"). Custom Services, like Henco, supplied various products and programs to schools and other nonprofit organizations for their fund-raising activities.

When Henco learned of Brown's employment with Custom Services, it filed a complaint seeking preliminary and permanent injunctive relief and compensatory damages based on allegations that Brown and Custom Services breached or induced a breach of a restrictive covenant not to compete that was contained in Brown's employment contract with Henco. The restrictive covenant provided as follows:

> For a period of one (1) year following the termination of this Agreement, the Salesperson will not, within the territory outlined in paragraph (5) or as amended, directly or indirectly own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the Company at the time of the termination of this Agreement. Further, the Salesperson covenants that within the said territory he will not sell or deal in any programs, systems, products, goods, supplies or services similar to those dealt in by the Company at the time of the termi-

---

1. A salesman is "a man way out there in the blue, riding on a smile and a shoeshine. And when they start not smiling back—that's an earthquake." A. Miller, *Death of a Salesman*, 138 (1949).

nation of the Agreement. In addition to the foregoing, the Salesperson agrees that this restrictive covenant shall include acting in concert with others in a manner whereby the Salesperson shall supervise the activity or sale of another in the territory set out in paragraph (5) above, or as amended.

The district court held a hearing on the application for a preliminary injunction and issued an order on September 13, 1989, enjoining Brown from engaging in the acts listed in the restrictive covenant until January 24, 1990, which was one year from the date Brown resigned from his job with Henco. Brown filed a timely notice of appeal and this court heard oral argument on this matter on April 18, 1990. No party requested an expedited appeal.

■ The only issue argued before and ruled on by the district court was Henco's motion for a preliminary injunction to expire January 24, 1990. Because this appeal was heard more than eleven weeks after the end-date of the injunction, we raised the threshold issue of mootness. Article III of the Constitution requires that federal courts only decide disputes that present a "Case or Controversy." Because the preliminary injunction Brown appealed from expired under its own terms, the issues decided by the trial court pertaining to the propriety of a preliminary injunction have "lost ... [their] character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Brown's counsel did not allege, and could not allege, that this case falls within the "capable of repetition, yet evading review" exception. *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55

L.Ed. 310 (1911). The merits of the claims in Henco's complaint and Brown's counterclaim need not "evade review" because the trial court will resolve them when it tries this case. At oral argument, however, Brown's attorney did allege that the injunction bond kept the appeal of the preliminary injunction alive.

■ In *University of Texas v. Camenisch,* 451 U.S. 390, 396, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981), the Supreme Court noted that "when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond can generally not be resolved on appeal, but must be resolved on a trial on the merits." *See also Certified Grocers of Ill. v. Produce, Etc. Union, Local 703,* 816 F.2d 329, 331 (7th Cir.1987). The "injunction bond exception" to the nonappealability of moot preliminary injunctions arises in cases where the district court reaches a final decision on the merits of the plaintiff's case after earlier granting a preliminary injunction, the defendant moves the district court for damages on the injunction bond under FED.R.CIV.P. 65(c),[2] and the defendant appeals the district court's denial or partial award of damages incurred as a result of the issuance of the preliminary injunction. *See id.* 451 U.S. at 396–98, 101 S.Ct. at 1834–35; *see also Klein v. Califano,* 586 F.2d 250, 256 (3d Cir.1978). If Brown eventually moves the district court for damages on the injunction bond and is dissatisfied with the district court's ruling, we can review the correctness of the trial judge's decision after the district court has had an opportunity to fully deliberate on the merits of the parties' claims.

In summary, the issue of whether the district court should have issued the preliminary injunction is moot because the in-

---

**2.** Rule 65(c) provides in part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

FED.R.CIV.P. 65(c). Any award of damages on an injunction bond rests in the sound discretion of the district court's equity jurisdiction. *Russell v. Farley,* 105 U.S. [15 Otto] 433, 441–42, 445, 26 L.Ed. 1060 (1882); *H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977).

junction has dissolved on its own terms well before this appeal was heard. It would be inappropriate for this court to intimate any view on the merits of the parties' competing claims, and we therefore decline appellant's request that we do so. Accordingly, we DISMISS Brown's interlocutory appeal as MOOT.