In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4012

DOREL JUVENILE GROUP, INC.,

*Plaintiff-Appellant,*

*v.*

LOIS DiMARTINIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 C 1295—**David F. Hamilton,** *Judge.*

ARGUED JUNE 1, 2007—DECIDED JULY 26, 2007

Before FLAUM, MANION and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Lois DiMartinis ("DiMartinis") left her job at Dorel Juvenile Group, Inc. ("Dorel") to work for a competitor, Summer Infant, Inc. ("Summer Infant"). Both companies produce products for infants, children and their parents. Examples of these products are car seats, strollers, play yards, swings, bassinets, activity centers, high chairs, and other health, play and safety related items. By all accounts, the industry is highly competitive and when DiMartinis began working at Dorel, the company asked her to sign a non-compete agreement. DiMartinis declined to do so but did sign a confidentiality agreement. She worked for Dorel for more than nine years, rising to the position of Director of Marketing

Communications. According to her job description, she played a key role in establishing the overall corporate brand strategy, building brand recognition and sales through advertising, promotions, PR and licensing.

On February 3, 2006, DiMartinis went on maternity leave from Dorel. That leave was unexpectedly lengthened when her child was born with medical problems that required her attention. When the scheduled date for her return to work approached, she offered to resign but Dorel put her on unpaid leave instead. Before this extended leave ended, on August 7, 2006, DiMartinis announced her departure from Dorel. She had been offered a job at Summer Infant that provided a schedule that would better accommodate her parenting responsibilities. Summer Infant offered DiMartinis the position of Vice President of Product Marketing. According to Summer Infant, the primary responsibility of that position is to supervise and mentor product managers and participate in product development.

On August 30, 2006, Dorel filed a complaint for injunctive relief and money damages against DiMartinis. The complaint alleged trade secret misappropriation, unfair competition, a violation of the Computer Fraud and Abuse Act, breach of contract and breach of fiduciary duty. On the same day that Dorel filed the complaint, the company also filed a motion for a preliminary injunction. The motion sought to enjoin DiMartinis from providing services to Summer Infant in any capacity relating to the development, sale, or marketing of any juvenile product category in which Dorel competes, and to prohibit DiMartinis from using or disclosing any of Dorel's confidential information. The district court allowed the parties to engage in expedited discovery and then held a hearing on the motion for a preliminary injunction in October 2006. At the hearing, Dorel clarified that it was seeking only a six month injunction because it expected that the products at

the core of its concerns were going to be introduced to the public in the second quarter of 2007. In practical terms, that meant the injunction would stretch from October 20, 2006 through April 20, 2007. At the end of that time, Dorel expected the information would be public and therefore could no longer be considered confidential or a trade secret. Dorel specifically asked that DiMartinis be enjoined from working on the development, sale or marketing of a range of juvenile product categories, including activity centers, bathing products, cribs, car and booster seats, bouncers, gates and safety items, high chairs, infant health products, monitors, play yards, potties, ride-ons, strollers and travel systems, swings, teethers, walkers and step stools. Dorel also requested that DiMartinis be enjoined from disclosing any confidential Dorel information.

The district court denied the motion. The court noted that, in order to show entitlement to a preliminary injunction, the plaintiff was required to demonstrate a reasonable likelihood of success on the merits and a substantial threat of immediate irreparable harm if injunctive relief was not granted. If those two thresholds were met, the court would consider the balance of harms to both parties and the public interest. Applying all of those factors, the court found that the principal information at stake in the case was brand positioning strategies in certain categories of the juvenile products industry. The evidence demonstrated that, although the information was sensitive and generally treated as confidential by Dorel, the information also was fairly general, subject to change and evolution, and had a very short shelf life. According to the court, because the industry worked on a cyclical calendar, DiMartinis's new employer would be able to do little with the information before it became public when the products were released into the marketplace. The court found that the evidence did not support the defendant's

theory of inevitable disclosure and that there was no evidence of bad faith or purposeful disclosure by DiMartinis. The court generally credited DiMartinis's testimony and noted that she was moving into a significantly different position at Summer Infant than she occupied at Dorel. The court found that the information DiMartinis possessed on product development at Dorel was relatively stale, especially because she had not worked in that area for three years and had been sidelined by her maternity leave for many months. The court also concluded that the injunction sought by Dorel was so broad that it would effectively grant Dorel a non-compete agreement with DiMartinis even though she had expressly declined to enter into such an agreement with her employer. The court determined that there was neither an imminent nor a great risk of irreparable harm to Dorel, that the balance of harms between Dorel and DiMartinis was a draw, and that the public interest factor was not decisive. Accordingly, the court denied the motion for a preliminary injunction. Dorel appeals, challenging nearly every fact-finding and some of the legal standards used by the district court. DiMartinis, in turn, defends the district court's ruling but also contends that the appeal is moot by virtue of the fact that the April 20, 2007 end date for the requested injunction has come and gone. According to DiMartinis, any relief granted by this court will have no practical impact on Dorel.

The party asserting mootness, in this case DiMartinis, bears the burden of persuasion. *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004). DiMartinis meets that burden here in demonstrating that the appeal is moot. Federal courts may not give opinions on moot questions or abstract propositions. *Calderon v. Moore*, 518 U.S. 149, 150 (1996). An appeal should "be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant 'any

effectual relief whatever' in favor of the appellant." *Calderon*, 518 U.S. at 150. *See also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Worldwide Street Preacher' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004) (a court should dismiss an appeal as moot when it can no longer affect the rights of the litigants in the case); *Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (when a court's decision would have no practical impact on the parties, the case is moot); *Orion Sales, Inc. v. Emerson Radio Corp.*, 148 F.3d 840, 842 (7th Cir. 1998) (the court of appeals is without power to decide questions which cannot affect the rights of litigants in the case before the court). In this case, Dorel asked for an injunction that would expire on April 20, 2007 because it expected that its trade secrets would become public at that time when the products were released into the marketplace. This appeal was heard on June 1, 2007, more than a month after the requested injunction would have expired. We cannot grant Dorel any meaningful relief related to that injunction, and the appeal is therefore moot. *See Worldwide Street Preachers*, 388 F.3d at 557-58 (the appeal of a preliminary injunction related to a particular parade became moot after the parade was over because the court could do nothing to alter what took place during the parade); *Stotts*, 230 F.3d at 990-91 (the appeal of the denial of a preliminary injunction aimed at allowing a student to play basketball during his senior year of high school became moot when the student graduated); *Orion Sales*, 148 F.3d at 842 (when a party seeks in its appeal dissolution of an injunction after that injunction has expired, the appeal is moot); *Henco, Inc., v. Brown*, 904 F.2d 11, 13 (7th Cir. 1990) (when a preliminary injunction from which a party appeals has expired by its own terms

by the time the appeal is heard, the issues pertaining to
the propriety of a preliminary injunction have lost their
character as a present, live controversy, and the appeal
is moot).

We are not persuaded by any of Dorel's responses to this
straightforward conclusion. Dorel argues that its trade
secrets are entitled to protection so long as they retain
secrecy and competitive value, and that there is no evi-
dence that the trade secrets are now public. But Dorel
itself limited the term of its injunction to that six month
period, representing to the court that it expected the
information to be released to the public when the relevant
products went on the market in April 2007. There is no
evidence in this record to the contrary and we cannot
engage in additional fact-finding at this stage of the
proceedings.[1] If, contrary to Dorel's expectations and
representations, the information was not released to the
public by April 20, 2007, that is an issue to raise in the
ongoing action in the district court, not in the court of
appeals.

Dorel also argues that its trade secrets are entitled to
protection for an additional period after disclosure to
eliminate the unfair competitive advantage that could be
gained from misappropriation. We have no quarrel with
the general proposition that a court may grant an injunc-
tion that would stretch beyond the public release of trade

---

[1] Indeed, in a motion for an expedited briefing schedule in this
court, Dorel emphasized that the injunction was limited in scope
to a period of approximately six months. Dorel argued that "the
issue of an injunction potentially will be moot if the Court rules
after DiMartinis and her new employer have had the oppor-
tunity to use the information to develop competing strategies
for launch in 2007, and the information is released into the
public domain." *See* Plaintiff-Appellant's Motion for Expedited
Briefing Schedule, ¶¶ 4, 6.

secret information in order to prevent a wrongdoer from gaining the advantage of a head start. *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 708 (7th Cir. 2006) (a trade secret injunction may be extended past the time the information becomes public, to a time when the advantage conferred by a wrongfully acquired lead time has dissipated); *3M v. Pribyl*, 259 F.3d 587, 609 (7th Cir. 2001) (a court should continue an injunction against a person who has misappropriated a trade secret only for a period of time reasonable to eliminate commercial advantage which the wrongdoer would otherwise derive from the violation). But again, this is not what Dorel requested in the district court. Dorel proposed April 20, 2007 as the date that would adequately protect its interests. If in hindsight Dorel believes that date was inadequate, that is a matter to raise in the ongoing litigation in the district court, not in the court of appeals.

In a slight variation of this same argument about timing, Dorel argues that even if the district court had granted the requested injunction, Dorel intended to ask the district court to extend the injunction if the information remained secret at the end of the six month period. We do not have this hypothetical extended injunction before us. The only injunction on appeal is the six month injunction that was set to expire on April 20, 2007. Because we cannot grant any meaningful relief in regards to the injunction that Dorel requested, the appeal must be dismissed as moot. *Stotts*, 230 F.3d at 990-91; *Orion Sales*, 148 F.3d at 842; *Henco*, 904 F.2d at 13. We do not intend for our opinion to be construed as a judgment on the merits of the underlying dispute between Dorel and DiMartinis.

DISMISSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*