In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1342 & 08-1443

IN RE:

REPOSITORY TECHNOLOGIES, INC.,

*Debtor-Appellee/Cross-Appellant.*

APPEAL OF:

WILLIAM G. NELSON, IV,

*Appellant/Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 1857—**Amy J. St. Eve**, *Judge.*

No. 08-2164

WILLIAM G. NELSON, IV,

*Plaintiff-Appellee,*

*v.*

DAVID K. WELCH AND CRANE, HEYMAN,
SIMON, WELCH & CLAR,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 4825—**Charles P. Kocoras**, *Judge.*

ARGUED OCTOBER 30, 2008—DECIDED APRIL 12, 2010

Before EASTERBROOK, *Chief Judge,* and RIPPLE and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.*   This opinion addresses two separate cases, each involving disputes surrounding the bankruptcy of Repository Technologies, Inc. ("RTI"), a now-defunct software company. The parties interested in these disputes and their lawyers have been on a litigation death march since April 2006. They have passed through a bankruptcy court, three federal district courts, and two state courts (that we know of) before arriving here. As one might expect from such a barrage of litigation, untangling and resolving the issues presented takes some time and space, so bear with us.

Both cases require us to brave a hornet's nest of jurisdictional issues. In the *In re RTI* case, these issues turn out to be dispositive, and we must dismiss this case as moot based on the sale of RTI's assets and termination of its business. In contrast, federal jurisdiction exists over the *Nelson v. Welch & Crane, Heyman, Simon, Welch & Clar ("CHSWC")* case, allowing us to address the merits of whether the district court properly declined to exercise supplemental jurisdiction over the state-law claims of plaintiff William G. Nelson, IV following the dismissal of Nelson's only federal claim from the lawsuit. We conclude that Nelson's federal and state-law claims are so entangled that the district court should have retained supplemental jurisdiction over the state-law claims. We accordingly reverse and remand for the district court to resolve Nelson's entire lawsuit on the merits.

## I. Background

### A. Facts

RTI marketed, supplied, and maintained software. Unfortunately, RTI did not fare well in the midst of a downturn in the software industry, reporting net losses from 2000 to 2004. When it became clear that RTI's existing credit line with its principal secured lender, West Suburban Bank, was insufficient to meet its business expenses, William G. Nelson, IV, a minority shareholder and member of RTI's Board since 1996, offered to finance RTI's operations. On August 30, 2002, RTI executed a revolving credit note with Nelson providing for a maximum credit amount of $500,000, a 15% annual interest rate, and monthly, interest-only payments until August 1, 2007, when the entire balance was to become due. Nelson simultaneously advanced $500,000 and obtained a security interest in all of RTI's assets, which he subordinated to the Bank's security interest. On December 19, 2003, RTI's Board (with Nelson not participating) authorized an increase in the Nelson credit line to $1.5 million. The parties did not execute new loan documents or security agreements in connection with this extension of the credit line; however, RTI paid 15% interest on all of Nelson's additional advances in accordance with the terms of the original note.

By May 28, 2004, Nelson had advanced approximately $1.74 million to finance RTI's operations. Nelson stopped making advances at that time but also suspended RTI's obligations to pay interest, occasionally telling RTI's president, E. James Emerson, that he did not expect to

be repaid until RTI "was no longer in trouble." Ultimately, however, Nelson took steps to call in his debt. On April 4, 2006, Nelson personally paid off the $126,484 balance due on the Bank's loan, elevating himself to RTI's sole secured creditor. On April 11, Nelson resigned as an RTI director and sent Emerson a notice of default, which demanded that RTI pay $509,687 in overdue interest payments in order to avoid an "event of default."

### B. *In re RTI*, Nos. 08-1342 & 08-1443

RTI, unable to pay the interest due on Nelson's loans and hoping to delay a foreclosure action, filed for Chapter 11 reorganization on April 25, 2006. Nelson filed a proof of a secured claim of $2.4 million, *see* 11 U.S.C. § 501(a), representing the amount due on the loans made by both Nelson and the Bank. RTI also filed an adversary proceeding seeking to recharacterize Nelson's debt as equity and to subject Nelson's interests in RTI to equitable subordination, *see id.* § 510(c)(1).

The bankruptcy court conducted a trial and, on February 13, 2007, entered a judgment in the adversary proceeding that completely denied RTI's claim for equitable subordination of Nelson's loans. The court did, however, recharacterize $240,000 of Nelson's loans as equity, $240,000 being the amount of Nelson's $1.74 million in total loans that exceeded the $1.5 million credit line formally authorized by RTI's Board. Taking into account this partial recharacterization and subtracting the payments on Nelson's loans already made by RTI, Nelson was left with a secured claim of approximately $1.8 million.

In a separate order, the bankruptcy court dismissed the bankruptcy case in light of RTI's concession that, absent full recharacterization and equitable subordination of Nelson's debt, RTI could not put forth a confirmable plan for Chapter 11 reorganization. *See id.* § 1129(a)(7)(A)(ii) (providing that the bankruptcy court may approve a Chapter 11 reorganization plan only if "each holder of a claim or interest [such as a secured creditor like Nelson] . . . will receive or retain under the plan . . . property of a value . . . that is not less than the amount that such holder would so receive or retain" in a Chapter 7 liquidation). That order, like the judgment in the adversary proceeding, referred to the court's "Findings of Fact and Conclusions of Law," in which the court rejected Nelson's argument to dismiss the bankruptcy case on the alternative ground that RTI had filed in bad faith. Specifically, the court determined that the "filing of this bankruptcy was a rational reaction to Nelson's actions, and was partially successful. Therefore, the bankruptcy filing cannot be held to be in bad faith." *In re Repository Tech., Inc.*, 363 B.R. 868, 896 (Bankr. N.D. Ill. 2007).

Also on February 13, 2007, after the bankruptcy court dismissed RTI's case, Nelson filed a complaint in federal district court before Judge Coar, seeking damages and injunctive relief for RTI's breach of its loan contract with Nelson. The following day, at 9:15 a.m., the court granted Nelson's motion for a temporary restraining order ("TRO") freezing all of RTI's assets pending the resolution of Nelson's contract claims. Just prior to that time, however, RTI transferred approximately $100,000 to the law firm of Crane, Heyman, Simon, Welch & Clar ("CHSWC"),

which had represented RTI in the bankruptcy case. The court also granted Nelson's motion to appoint a receiver to operate RTI's business in order to protect Nelson's interest in RTI's assets. On March 20, Nelson conducted a Uniform Commercial Code ("U.C.C.") sale of RTI's assets to himself as the successful bidder for $475,000, and the receiver transferred RTI's assets to Nelson. On June 7, the court approved the receiver's final report on the sale and liquidation of RTI's assets and, on Nelson's motion, dismissed Nelson's remaining contract claims without prejudice.

Meanwhile, Nelson had also appealed the bankruptcy court's judgment in the adversary proceeding to the district court before Judge St. Eve, *see* 28 U.S.C. § 158(a), who, on January 15, 2008, affirmed all of the bankruptcy court's factual findings and legal conclusions. *In re Repository Tech., Inc.*, 381 B.R. 852 (N.D. Ill. 2008). In particular, the court denied Nelson's motion to strike as dictum the bankruptcy court's finding that RTI had not filed for bankruptcy in bad faith.

Nelson has appealed the district court's judgment in the adversary proceeding to this court, *see* 28 U.S.C. § 158(d), arguing that the bankruptcy court erred in partially recharacterizing his loans as equity. Nelson also urges this court to strike as dictum the bankruptcy court's statement that RTI did not file for bankruptcy in bad faith. RTI has cross-appealed, arguing that the bankruptcy court should have recharacterized all of Nelson's loans and equitably subordinated Nelson's interests in RTI.

### C. *Nelson v. Welch & CHSWC*, No. 08-2164

On July 11, 2007, Nelson filed a complaint in the Illinois Circuit Court of Cook County against David K. Welch and CHSWC ("defendants"), alleging that the defendants had (1) conspired with RTI's majority shareholders, E. James and Kathleen Emerson, to use RTI's Chapter 11 bankruptcy case to enrich themselves, (2) tortiously interfered with RTI's loan contract with Nelson, and (3) abused the bankruptcy process. Seizing on the federal abuse of the bankruptcy process claim, the defendants removed the case to federal district court before Judge Kocoras. *See* 28 U.S.C. § 1334(b) (granting district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *id.* § 1452(a) (providing for the removal of a claim over which the "district court has jurisdiction . . . under section 1334 of this title"). Preferring to stay out of federal court, Nelson amended his complaint to remove the allegation that the defendants "abused the process of the Bankruptcy Court," but the district court nonetheless denied Nelson's motion to remand to state court for lack of federal jurisdiction. The court concluded that it still had "arising in" jurisdiction over the case under § 1334(b) because, even after the formal deletion of the abuse of process count from the complaint, Nelson's claims "revolve[d] around his assertion that Welch and his firm engaged in abuse of bankruptcy process."

While Nelson's suit against Welch and his firm was pending before Judge Kocoras, back in the bankruptcy

case, Judge St. Eve had affirmed the bankruptcy court's finding that RTI had not filed its Chapter 11 petition in bad faith. On February 8, 2008, Judge Kocoras concluded that Judge St. Eve's decision precluded Nelson's abuse of process claim and dismissed that claim with prejudice. The defendants then moved to dismiss Nelson's entire complaint on the merits, citing to Judge Kocoras's earlier jurisdictional analysis that the complaint was based on an abuse of the bankruptcy process. Curiously, though, the judge determined that Nelson retained "state law claims" that stemmed "from events that happened outside the bankruptcy context" and relinquished supplemental jurisdiction over those claims to the Illinois Circuit Court. *See* 28 U.S.C. § 1367(c)(3).

The defendants have appealed the remand of Nelson's supplemental claims to state court. They argue that, because the district court's dismissal of Nelson's abuse of the bankruptcy process claim was dispositive of his state-law claims, the court should have retained supplemental jurisdiction over the state-law claims in order to dismiss them on the merits.

In the discussion that follows, we will address separately the appeals from RTI's adversary proceeding and Nelson's lawsuit against Welch and his firm.

## II.  Analysis: *In re RTI*, Nos. 08-1342 & 08-1443

### A.  Subject Matter Jurisdiction and Mootness

In *In re RTI* (the adversary proceeding), we begin and end with federal subject matter jurisdiction and, specifi-

cally, the issue of mootness. Article III of the Constitution restricts federal courts to hearing "cases or controversies," a restriction that subsists through all stages of review. *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2768 (2008). In order to maintain federal jurisdiction during an appeal, the parties must continue to have a "personal stake in the outcome." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (citation omitted). If, by virtue of an intervening event, the appellate court cannot grant "any effectual relief whatever" for the appellant, the court must dismiss the case as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) (citation omitted).

We conclude that the sale of RTI's business assets following the dismissal of its bankruptcy proceeding mooted any actual controversy in this case. The issue in these appeals is whether the bankruptcy court should have recharacterized Nelson's $1.74 million in loans as equity. That issue was only relevant, however, to RTI's ability to reorganize under Chapter 11. As detailed in the reorganization plan that RTI filed with the bankruptcy court, the complete recharacterization and equitable subordination of Nelson's debt was necessary in order for RTI to put forth a confirmable plan in which none of the creditors' claims were "impaired." *See* 11 U.S.C. § 1129(a)(8). Consequently, after refusing to fully subordinate Nelson's loans, the bankruptcy court dismissed the bankruptcy case based on RTI's inability to effectuate a reorganization plan. Yet now that RTI has lost all of its assets at Nelson's U.C.C. sale, it cannot effectuate a reorganization plan regardless of how much (if any) of Nelson's debt the bankruptcy court should have

recharacterized; RTI no longer has any business to reorganize. Since the recharacterization issue was so intertwined with RTI's Chapter 11 reorganization, the impossibility of reorganization following the sale of RTI's assets moots this case. *See Bevan v. Socal Cmmc'ns Sites, LLC (In re Bevan)*, 327 F.3d 994, 996 (9th Cir. 2003) ("[I]f an issue is closely connected to the reorganization process itself, it will be mooted when the proceeding is dismissed."); *cf. Belda v. Marshall*, 416 F.3d 618, 620 (7th Cir. 2005) (finding moot an appeal from the denial of a reorganization plan based on the dismissal of the reorganization proceeding).

Even viewing the recharacterization issue presented by this case apart from RTI's reorganization proceeding, we still conclude that the parties no longer retain the required "personal interest" in the issue so as to avoid mootness. *Davis*, 128 S. Ct. at 2768. In his appeal, Nelson argues that the bankruptcy court erred in recharacterizing $240,000 of his $1.74 million in loans as equity. Given the results of Nelson's U.C.C. sale of RTI's assets, this partial recharacterization was entirely inconsequential. After the sale of all of RTI's assets, Nelson recovered only $475,000, a fraction of his $1.8 million secured debt claim against RTI recognized by the bankruptcy court. Moreover, not only has RTI lost all of its assets as a result of the sale, but it also has completely terminated its business operations, meaning that RTI has no prospects of future earnings that might further satisfy Nelson's debt. RTI's corporate existence may be intact, but it is a shell corporation with nothing but a debt owed to Nelson to its name. Should RTI's share-

holders wish to reenter the software business, the likelihood that they would do so through RTI is less than remote, as their first nearly $1.8 million in new assets would be subject to Nelson's claim. Indeed, Nelson's counsel acknowledged at oral argument that RTI has no "realistic possibility" of reconstituting its business, making his case "economically moot." The upshot is that any opinion by this court addressing the bankruptcy court's $240,000 partial recharacterization of Nelson's debt would have no "practical impact." *Stotts v. Cmty. Unit Sch. Dist. No. I*, 230 F.3d 989, 991 (7th Cir. 2000).

RTI makes a slightly stronger effort than Nelson to avoid mootness, asserting its interest in recovering the business assets and customer contracts lost at Nelson's U.C.C. sale. RTI suggests that, if this court were to reverse the bankruptcy court and completely wipe out Nelson's debt, RTI could retrieve the assets sold at Nelson's U.C.C. sale and reinstate its business operations. The problem with RTI's suggested relief of undoing Nelson's sale is that we have no power to grant it. The sale occurred during the district court proceedings before Judge Coar, a separate case that RTI did not appeal and that is therefore beyond our review. *See York Ctr. Park Dist. v. Krilich*, 40 F.3d 205, 207 (7th Cir. 1994). Further, nothing in the record indicates that RTI sought a stay from the sale pending this appeal, and the failure to obtain such a stay generally moots an appeal challenging a judicial sale. *See FDIC v. Meyer*, 781 F.2d 1260, 1264 (7th Cir. 1986). In light of the unstayed, unappealed sale of RTI's assets, our review of the bankruptcy court's recharacterization decision could not result in "any

meaningful relief" for the parties. *Dorel Juvenile Group, Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007). The inability to provide such relief makes this case moot.

### B.  The Bankruptcy Court's "Dictum"

We come, then, to what we view to be the real motivation for this appeal from the bankruptcy court's decision. Nelson challenges the court's statement that RTI did not file its Chapter 11 petition in bad faith. According to Nelson, because the court dismissed the bankruptcy case based on RTI's inability to reorganize under Chapter 11, rather than on a bad-faith petition, the court's good-faith statement was "dictum" that was not essential to the outcome. *See Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005). Nelson further urges us to strike this dictum from the record, thereby hoping to avoid the preclusive effect of the bankruptcy court's statement in yet another lawsuit against E. James and Kathleen Emerson in Delaware state court. In that action, the Delaware Chancery Court held that the bankruptcy court's good-faith finding, as affirmed by the district court, precluded Nelson's claim that the Emersons breached their fiduciary duty to RTI by filing for bankruptcy in bad faith. *Nelson v. Emerson*, C.A. No. 2937-VCS, 2008 WL 1961150, at *1-*2 (Del. Ch. May 6, 2008) (unpublished).

Nelson is correct that the bankruptcy court's statement about RTI's good faith was dictum. This language was not "essential" to the outcome of dismissing RTI's bankruptcy case. *Tate*, 431 F.3d at 582. In fact, the court's

conclusion that RTI did not file for bankruptcy in bad faith supports the exact opposite outcome, since a bad-faith petition is one ground for dismissing a Chapter 11 case. *See Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 867 (7th Cir. 1989).

Still, Nelson's challenge to the bankruptcy court's dictum does not create a justiciable controversy because "dicta are not appealable rulings." *Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (2000); *see also Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992) ("There is no known basis for an appeal from a dictum." (quotation omitted)). We review "judgments," not explanatory language in lower court opinions. *In re UAL Corp.*, 468 F.3d 444, 449 (7th Cir. 2006). The recharacterization and equitable subordination issues that were essential to the bankruptcy court's judgment are moot, and Nelson's complaint about the court's good-faith dictum does not establish federal jurisdiction. We will accordingly vacate the judgment of the district court in the *In re RTI* adversary proceeding and remand with instructions to dismiss the appeal from the bankruptcy court as moot.

### III.  Analysis: *Nelson v. Welch & CHSWC*, No. 08-2164

### A.  Jurisdiction

We now proceed to our discussion of the *Nelson v. Welch & CHSWC* case. As with the *In re RTI* case, we must first address the existence of federal jurisdiction. At oral argument, we expressed concerns about both the district court's original jurisdiction and our appellate

jurisdiction. We received supplemental briefing from the parties, whose assistance we appreciate in resolving these thorny jurisdictional issues.

With respect to appellate jurisdiction, we raised the issue of whether 28 U.S.C. § 1447(d) bars appellate review of a district court's discretionary decision to remand state-law claims under § 1367(c). The Supreme Court has recently resolved this issue, holding that such discretionary remands are not based on a "lack of subject matter jurisdiction" within the meaning of § 1447(c), (d), *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009), so our appellate jurisdiction is secure. The issues of original subject matter jurisdiction, however, are more complicated.

The defendants sought to remove Nelson's action to federal court on the alternative grounds that the action (1) fell within the district court's bankruptcy jurisdiction under 28 U.S.C. § 1334(b); (2) fell within the court's diversity jurisdiction under 28 U.S.C. § 1332(a); and (3) was completely preempted by the Bankruptcy Code. In denying Nelson's motion to remand to the Illinois state court, the district court relied on the first ground, concluding that Nelson's case was one "arising in" bankruptcy. 28 U.S.C. § 1334(b). In light of that conclusion, the court did not address whether complete preemption provided an alternative basis for removal. The court also had no need to discuss diversity jurisdiction because the defendants had conceded that, under the "forum defendant rule" of 28 U.S.C. § 1441(b), removal based on diversity was not available since Nelson had

sued the defendants in the state of their own citizenship, Illinois.

The parties do not challenge the district court's finding that it had original, "arising in" jurisdiction over Nelson's abuse of the bankruptcy process claim, but we have an "independent obligation" to verify the court's subject matter jurisdiction. *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003).

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Proceedings "arising in" bankruptcy are "administrative matters that arise *only* in bankruptcy cases." *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, 565 (Bankr. N.D. Ill. 2007) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Unlike claims "arising under" title 11, which depend on a right "created or determined by a statutory provision of title 11," *id.*, claims "arising in" bankruptcy include "such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens," 1 Collier on Bankruptcy ¶ 3.01[4][c][iv] at 3-27 (15th ed. rev. 2008) (quotations omitted). A proceeding "arises in" bankruptcy only if it has "no existence outside of the bankruptcy." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).

In recognizing its jurisdiction over Nelson's case, the district court reasoned that Nelson's amended complaint, though based on state-law theories of civil con-

spiracy and tortious interference with a contract, focused on "the bankruptcy action and conduct within it." The court was unimpressed with Nelson's attempt to avoid federal jurisdiction by deleting the abuse of the bankruptcy process count from his original complaint, since even the civil conspiracy and tortious interference counts left in Nelson's amended complaint "revolve[d] around his assertion that Welch and his firm engaged in abuse of bankruptcy process." Because Nelson's claim of "a fraudulent or abusive bankruptcy filing . . . can only occur in the context of the bankruptcy case," the court concluded that the case fell within its "arising in" jurisdiction.

Based on our review of the amended complaint, we agree with the district court that Nelson's lawsuit is predicated on the defendants' participation in RTI's bankruptcy proceeding. The complaint charges that Welch and his law firm assisted RTI's majority shareholders, the Emersons, in breaching their fiduciary duties to RTI's shareholders and creditors by causing RTI to file for bankruptcy. The defendants allegedly knew that the bankruptcy case served the improper purpose of enriching the Emersons at RTI's expense, yet still agreed to act as RTI's bankruptcy counsel and file a frivolous Chapter 11 reorganization plan. Part of the damages that Nelson claimed were the legal fees incurred in litigating RTI's bankruptcy case. Nelson further alleged that the defendants waited until the dismissal of the bankruptcy case to transfer $100,000 in undeserved legal fees from RTI to themselves, thereby "momentarily evad[ing]" the bankruptcy court's jurisdiction. This charge

resembles a claim that RTI compensated its counsel without the requisite approval from the bankruptcy court. *See* 11 U.S.C. § 330(a)(1)(A) (authorizing the award of "reasonable compensation" to an attorney employed by a debtor-in-possession); Fed. R. Bankr. P. 2016(a) (requiring an application to the bankruptcy court before the award of compensation); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 993 (Bankr. N.D. Ill. 1990) (concluding that a proceeding "dealing with proper treatment of funds received by debtor's counsel 'arises in' the debtor's bankruptcy case"). These allegations make clear that Nelson's claims arise out of the defendants' conduct in RTI's bankruptcy case. Because such claims could not "have been the subject of a lawsuit absent the filing of a bankruptcy case," 1 Collier ¶ 3.01[4][c][iv] at 3-27, the district court correctly recognized its "arising in" jurisdiction.

True, several of Nelson's allegations concern the defendants' conduct before the official commencement of RTI's bankruptcy case. Rather than focusing on events after RTI's bankruptcy petition, these allegations maintain that Welch and his firm agreed beforehand to file the petition for the unlawful purpose of enriching the Emersons. This focus on the defendants' pre-petition acts distinguishes Nelson's claims from charges of attorney misconduct in handling an otherwise lawful bankruptcy case. *See Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 319-21 (6th Cir. 2006) (finding jurisdiction over a debtor's wife's state-law claims of slander, libel, and abuse of process arising out of statements made by the trustee's attorney in moving to hold the wife in contempt for violating a settlement agreement); *Mourad v.*

*Farrell (In re V & M Mgmt., Inc.)*, 321 F.3d 6, 7-8 (1st Cir. 2003) (per curiam) (concluding that a debtor's share-holder's claims of fraud, professional malpractice, and breach of fiduciary duty against the debtor's bankruptcy counsel "wholly [arose] out of the trustee and counsel's performance of their duties . . . after the petition for bankruptcy was filed" and therefore fell within the bank-ruptcy court's jurisdiction under § 1334(b)); *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930-31 (5th Cir. 1999) (finding jurisdiction over state-law malpractice claims against court-appointed accountants in a Chapter 11 case); *Lorence v. Does 1 Through 50 (In re Diversified Contract Servs.)*, 167 B.R. 591, 595 (Bankr. N.D. Cal. 1994) (recognizing "arising in" jurisdiction over claims brought by the trustee against the debtor's counsel for slander, libel, and tortious interference based on counsel's representations that the trustee was abusing her position for personal gain).

Nevertheless, we do not think that these pre-petition aspects of Nelson's complaint deprive the district court of "arising in" jurisdiction. The defendants in this case did not play some incidental role in RTI's bankruptcy; these lawyers served as RTI's bankruptcy counsel and fully litigated the Chapter 11 proceedings. *Cf. Commercial Loan Corp.*, 363 B.R. at 564-65 (finding no jurisdiction over a claim against the debtor's outside, non-bankruptcy counsel for assisting the debtor in unsavory loan transac-tions that led to bankruptcy); *Artra Group, Inc. v. Salomon Bros. Holding Co. (In re Emerald Acquisition Corp.)*, 170 B.R. 632, 642-43 (Bankr. N.D. Ill. 1994) (remanding state-law claims arising out of pre-bankruptcy transactions). And as

our review of Nelson's complaint makes clear, the defendants' pre-petition conduct is "inextricably bound to the bankruptcy proceeding" and Nelson's claim of abuse of the bankruptcy process. *Lowenbraun*, 453 F.3d at 321. Because Nelson's lawsuit is based on the defendants' role as bankruptcy counsel, recognizing these lawyers' right to remove the case to federal court is consistent with Congress's broad grant of federal jurisdiction over bankruptcy matters. *Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 841 (Bankr. W.D. Tex. 1997) (recognizing "arising in" jurisdiction over claims against the debtor's counsel for advice concerning the bankruptcy case); *see also Southmark*, 163 F.3d at 931 (emphasizing the need for bankruptcy courts to have the power to police court-appointed professionals); *cf. MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 915 (9th Cir. 1996) (in addressing whether the Bankruptcy Code preempted a state-law action against a creditor, stating that "Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts").

Having concluded that the district court had original, "arising in" jurisdiction over Nelson's abuse of the bankruptcy process claim, the next question is whether the court erred in remanding Nelson's supplemental state-law claims under 28 U.S.C. § 1367(c). But this question comes with its own slew of jurisdictional obstacles. The district court's remand of Nelson's claims not "arising in" bankruptcy would be improper if the court had some other basis of original jurisdiction over those claims. *See Baker v. Kingsley*, 387 F.3d 649, 656-57 (7th Cir. 2004) (noting that a district court would abuse its discretion under

§ 1367(c) by remanding a state-law claim that was completely preempted by federal labor law and therefore within the court's original jurisdiction); *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 847 (7th Cir. 2003) (Ripple, J., dissenting) ("The power to remand [under § 1367(c)] . . . does not extend to claims over which the district court has original jurisdiction."). In this case, the defendants' notice of removal cited two such alternative bases of original jurisdiction—diversity jurisdiction under 28 U.S.C. § 1332(a) and complete preemption.

As for diversity jurisdiction, Nelson correctly argued to the district court that the "forum defendant rule" of § 1441(b) prevented the defendants from removing his action to federal court based on diversity of citizenship. Under that rule, unless the basis for original jurisdiction is a claim "arising under" federal law, removal is possible only if none of the defendants "is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b). Because Nelson sued Welch and his firm in their home state of Illinois, the defendants could not remove Nelson's state-law claims under § 1441 even though the parties were diverse.

However, we have held that the forum defendant rule is non-jurisdictional, meaning that the rule does not divest the district court of jurisdiction over claims improperly removed by a forum defendant so long as complete diversity exists at the time of judgment. *Hurley v. Motor Coach Indus. Inc.*, 222 F.3d 377, 379-80 (7th Cir. 2000). Thus this case raises the interesting question of whether the forum defendant rule permits a district court to remand

supplemental state-law claims under § 1367(c), notwith-standing the existence of complete diversity, where (1) the defendant properly removed the action based on a non-diversity ground of original jurisdiction that has fallen out of the case, and (2) the plaintiff has preserved his objection to removal based on the forum defendant rule (as has Nelson in this case). *See Trask v. Kasenetz*, 818 F. Supp. 39, 45 (E.D.N.Y. 1993) (remanding to state court after the dismissal of federal claims based on the "under-lying logic" of the forum defendant rule, which is to protect the plaintiff's choice of forum subject to pro-tecting the defendant against the feared favoritism of the plaintiff's home state); *cf. Woods v. Sw. Airlines, Co.*, 523 F. Supp. 2d 812, 820 & n.2 (N.D. Ill. 2007) (retaining supple-mental jurisdiction over a state-law claim on the ground that a plaintiff forfeits the forum defendant rule by failing to invoke it within thirty days of removal, as required by 28 U.S.C. § 1447(c)).

We will not resolve this question today, since the defen-dants never argued to the district court that the existence of original, diversity jurisdiction prevented the court from remanding Nelson's state-law claims under § 1367(c). Because "the party asserting a right to a federal forum has the burden of proof," *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008), the defendants have forfeited any benefit from the district court's original diversity jurisdiction.

The defendants have, however, preserved their argu-ment that the district court had original jurisdiction over all of Nelson's claims based on the Bankruptcy Code's

complete preemption of those claims. The district court, after determining that it had "arising in" jurisdiction over Nelson's abuse of process claim, declined to consider the defendants' complete preemption argument. But as we have explained, remanding Nelson's state-law claims not "arising in" bankruptcy would be error if the doctrine of complete preemption gave the court original jurisdiction over those claims. *See Baker*, 387 F.3d at 656-57.

Complete preemption "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). Under this jurisdictional doctrine, certain federal statutes have such "extraordinary pre-emptive power" that they "convert[ ] an ordinary state common law complaint into one stating a federal claim." *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court. *Id.* at 596-97.

The Supreme Court has recognized only three federal statutes that completely preempt analogous state-law actions: § 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act, and §§ 85-86 of the National Bank Act. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003). We have

likewise recognized the narrowness of the doctrine, applying complete preemption only where "Congress clearly intended completely to replace state law with federal law and create a federal forum." *Adkins*, 326 F.3d at 835 (quotation omitted). A prerequisite to complete preemption is identifying a federal cause of action that "includes the same ingredients as the state claim and provides some recovery." *Id.* (quotation omitted).

Examining the interplay between the Bankruptcy Code and Nelson's state-law claims of civil conspiracy and tortious interference, we cannot identify any Code provision that provides an "exclusive cause of action" for the defendants' alleged filing for bankruptcy for the unlawful purpose of enriching themselves. *Beneficial Nat'l Bank*, 539 U.S. at 8. This lack of an express federal remedy indicates that Nelson's state-law claims are not completely preempted. *See Nelson v. Stewart*, 422 F.3d 463, 474 (7th Cir. 2005) (finding that a Code provision that designated a representative for the debtor's retirees in Chapter 11 proceedings, but that did not "purport to provide any federal cause of action for inadequate representation," did not completely preempt the retirees' state-law claims for unfair representation); *Adkins*, 326 F.3d at 835 (noting the absence of a federal cause of action under the Locomotive Inspection Act that would completely preempt the state tort claims of victims of a train collision).

We do not deny that the bankruptcy statutes have significant preemptive force. As explained by the Ninth Circuit, "the complex, detailed, and comprehensive

provisions of the lengthy Bankruptcy Code . . . demonstrate[ ] Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *MSR*, 74 F.3d at 914. If this case were tried in state court, the defendants might argue that Nelson's state-law claims are preempted by "the number of remedies" provided by the Code "to preclude the misuse of the bankruptcy process." *Id.* at 915 (concluding that a state-law action for malicious prosecution arising out of a creditor's filing of claims was preempted); *see also Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 702 (Bankr. N.D. Ill. 1999) (finding preemption of state-law claims based on "violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies"). Such a "conflict preemption" argument, however, is merely a federal defense that the defendants may present to the state courts in favor of dismissal. *Franciscan Skemp*, 538 F.3d at 601; *see also Nelson*, 422 F.3d at 475 (commenting that, while a bankruptcy statute's preemptive force was not so powerful to completely preempt the area, "viable defenses based on federal law, including [the statute], may well preempt otherwise valid state-law based causes of action"). Absent complete preemption, a defense that relies on "the pre-emptive effect of a federal statute" does not provide a basis for removal. *Beneficial Nat'l Bank*, 539 U.S. at 6. Because Nelson's civil conspiracy and tortious interference claims are not completely preempted by any bankruptcy law, the district court did not have original jurisdiction over those claims and, accordingly, had discretion to remand the claims under § 1367(c).

We acknowledge *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1086 (9th Cir. 2005), in which the Ninth Circuit held that state-law abuse of process claims arising out of creditors' filing of bad-faith, involuntary bankruptcy petitions were completely preempted and therefore removable to federal court. *Cf. MSR*, 74 F.3d at 916 (holding that a malicious prosecution action originally filed in federal court was "completely preempted by the structure and purpose of the Bankruptcy Code"). Relying on the rationale of *MSR*, the court in *Miles* reasoned that Congress intended 11 U.S.C. § 303(i), which authorizes damages against creditors who file involuntary petitions in bad faith, to be the "exclusive cause of action for damages predicated upon the filing of an involuntary bankruptcy petition." *Miles*, 430 F.3d at 1091.

Even if we were to agree with the Ninth Circuit's reasoning in *Miles*, the differences between the claims in that case and Nelson's claims illustrate that the Ninth Circuit's complete preemption analysis does not apply. Because the state-law claims in *Miles* were based on improper involuntary petitions, the court looked to § 303(i), which the court described as "comprehensive in that it specifically addresses the full range of remedies, from costs and attorneys' fees for dismissed involuntary petitions to compensatory and punitive damages for involuntary petitions filed in bad faith." *Id.* at 1090. The Code does not provide such comprehensive, express remedies for a creditor like Nelson allegedly harmed by a debtor's abusive, voluntary bankruptcy petition. On the contrary, 11 U.S.C. § 301, which authorizes debtors to commence a "voluntary case" by filing a petition,

contains no damages provision analogous to that provided by § 303(i) for involuntary cases.

## B.  Remand Under § 1367(c)

We reach, at last, the merits of the defendants' challenge to the district court's discretionary remand of Nelson's supplemental claims. The supplemental jurisdiction statute provides that a district court "may" decline to exercise jurisdiction over supplemental state-law claims for several enumerated reasons, including where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute codifies the judicially developed discretionary approach for remanding state-law claims after the federal claims drop out of the lawsuit. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988). Correspondingly, we review the district court's refusal to exercise supplemental jurisdiction for an abuse of discretion. *Montaño v. City of Chicago*, 375 F.3d 593, 601 (7th Cir. 2004) (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 499-500 (7th Cir. 1999)). We ordinarily will not disturb the district court's remand of supplemental claims if the court explains that it is relying on one of the factors enumerated in § 1367(c). *Cf. id.* (finding an abuse of discretion where the district court "offered no explanation" for its remand order). In addition to those statutory factors, the court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S.

156, 173 (1997) (quoting *Cohill*, 484 U.S. at 350). Based on these values, in cases such as this one where the district court disposes of the federal claims before trial, we will reverse the court's decision to relinquish supplemental jurisdiction over state-law claims "only in extraordinary circumstances." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001); *see also Groce*, 193 F.3d at 501 ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

However, even where the district court has dismissed all of the federal claims over which it has original jurisdiction, the court's discretion to remand supplemental state-law claims is not absolute. We have stated that if a district court's pre-trial disposition of a federal claim would have "preclusive effect" on the supplemental state-law claims, *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001), or if the supplemental and federal claims "are so entangled" that "the rejection of the latter probably entails rejection of the former," *Coe v. County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998), the court should retain supplemental jurisdiction. That is because "when a state-law claim is clearly without merit, it invades no state interest—on the contrary, it spares overburdened state courts additional work that they do not want or need—for the federal court to dismiss the claim on the merits rather than invite a further, and futile, round of litigation in the state courts." *Id.*

The "entanglement" between Nelson's state-law claims and the dismissed abuse of the bankruptcy process claim is substantial. As discussed above in our jurisdictional analysis, Nelson's amended complaint, though based on state-law theories of civil conspiracy and tortious interference with a contract, focused on the defendants' alleged abuse of the bankruptcy process. The complaint alleges that the Emersons, "acting in concert" with Welch and CHSWC, breached their fiduciary duties as RTI's directors by filing a Chapter 11 case that they knew would diminish RTI's value. The complaint continues that Welch and CHSWC "acted as RTI's general bankruptcy counsel" and agreed with the Emersons to file for Chapter 11 "for an unlawful purpose." In charging civil conspiracy, the complaint alleges that the defendants knew that the bankruptcy filing was "improper" and "a means to achieve an unlawful goal, being the enrichment of the Emersons and CHSWC at the expense of RTI." In charging tortious interference, the complaint accuses the defendants of entering into the same civil conspiracy to "achieve the unlawful goal of inducing RTI to breach its loan contract with Nelson."

In denying Nelson's motion to remand the case to the Illinois Circuit Court for lack of subject matter jurisdiction, Judge Kocoras apparently recognized this entanglement between Nelson's state-law claims and his abuse of process claim. Although Nelson had dropped the specific abuse of process claim from his original complaint, the judge reasoned that the civil conspiracy and tortious interference claims left in Nelson's amended

complaint "revolve[d] around his assertion that Welch and his firm engaged in abuse of bankruptcy process." Given this observation about the overlap between Nelson's federal and state-law claims, we might expect that the judge would favor resolving all of Nelson's claims in federal court. However, after dismissing Nelson's abuse of process claim based on Judge St. Eve's finding that RTI filed for bankruptcy in good faith, Judge Kocoras purported to remand to the Illinois Circuit Court Nelson's remaining claims that "stem from events that happened outside the bankruptcy context."

We are uncertain what specific "claims" outside the bankruptcy context the judge thought remained viable following the dismissal of Nelson's abuse of process claim. Based on our review of the amended complaint, all of the allegations supporting Nelson's theories of civil conspiracy and tortious interference are predicated on the defendants' participation in RTI's bankruptcy case. Civil conspiracy consists of an agreement to accomplish an unlawful purpose and "an overt act in furtherance of the conspiracy" that is "tortious or unlawful in character." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). Here, the defendants' alleged "overt acts" in furtherance of the conspiracy to enrich themselves at RTI's expense include meeting with the Emersons and discussing RTI's finances, filing an adversary proceeding against Nelson in the Chapter 11 case, filing a frivolous plan of reorganization, and diverting unearned funds to Welch and his firm. We do not see how these acts are separable from the bankruptcy context.

As for the tortious interference claim, that count of Nelson's amended complaint relies on the allegation that the defendants entered into the "hereinbefore alleged" civil conspiracy to achieve "the unlawful goal of inducing RTI to breach its loan contract with Nelson." But as we have discussed, the alleged civil conspiracy depends on acts associated with preparing and litigating RTI's bankruptcy case. Again, this claim is inextricably bound to Nelson's claim that Welch and his law firm abused the bankruptcy process.

Nelson insists that his complaint spells out viable claims based on conduct outside the bankruptcy context. According to Nelson, he has properly alleged that the defendants assisted the Emersons in using RTI's funds for their personal enrichment through methods that included, but were not limited to, an improper bankruptcy filing. However, our review of the complaint indicates that even those allegations describing conduct that occurred outside the official time frame of RTI's bankruptcy case are predicated on the defendants' role as bankruptcy counsel.

The complaint alleges that the first period of association between the Emersons and the defendants was April 11 to April 25, 2006, which were the two dates when Nelson served RTI with a notice of default and RTI filed for bankruptcy, respectively. During this two-week pre-petition time period, any bankruptcy counsel would review the debtor's finances in preparation for a Chapter 11 proceeding. Thus the complaint's suggestion that the defendants' correspondence with Nelson in

"April 2006" was "well prior to the filing of the Chapter 11 case" is incredible.

The complaint also alleges that, both before and after the Chapter 11 case, the defendants entered into agreements with the Emersons to receive RTI funds that they did not deserve "inasmuch as Welch and CHSWC provided no legal representation to RTI," but rather "undertook to represent the interests of the Emersons." However, those agreements would be unlawful only if Welch and his firm used the bankruptcy purpose for the improper purpose of self-enrichment, rather than the proper purpose of advancing RTI's interests. The defendants' alleged misconduct is inseparable from the bankruptcy context.

Finally, the complaint charges that, immediately after the dismissal of the bankruptcy case, the Emersons, "acting in concert" with the defendants, caused RTI to transfer $100,000 to Welch and his law firm—money that was undeserved because the defendants had not represented RTI's interests in the bankruptcy proceeding. The complaint further alleges that the defendants seized on the one-hour banking period between the dismissal of the bankruptcy case and the entry of the TRO in Nelson's subsequent breach of contract action to effectuate the transfer. Paying bankruptcy counsel upon the dismissal of the case is hardly conduct that occurs outside the bankruptcy context. And while the complaint suggests that the transfer was inconsistent with the spirit of the TRO, there is no allegation that the defendants actually violated any court order.

In sum, even construing the complaint in the light most favorable to Nelson, *see Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), all of the allegations supporting Nelson's civil conspiracy and tortious interference claims are predicated on the defendants' participation in RTI's bankruptcy case. Because these state-law claims are so entangled with Nelson's federal abuse of the bankruptcy process claim, the district court should have retained supplemental jurisdiction over the entire lawsuit. *See Coe*, 162 F.3d at 496.

We acknowledge the general rule, rooted in concerns of judicial economy and comity, that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). That rule would seem to apply in this case, since the district court dismissed Nelson's abuse of process claim just six months after removal, before the court had addressed the defendants' motion to dismiss or made any other dispositive ruling. However, although this particular federal case captioned *Nelson v. Welch & CHSWC* never advanced beyond the pleading stage, we believe that a complete analysis of judicial economy requires us to consider the totality of the federal-court litigation arising out of RTI's bankruptcy. As detailed in this opinion, the Nelson litigation has already engaged one bankruptcy judge, three district court judges, and now, an appellate panel of this court. Because each of these courts has parsed the relatively voluminous record of these proceedings and evaluated numerous claims by

and against Nelson, this case is not one involving "very little federal judicial investment." *Id.* at 1251.

We also find few comity concerns in retaining supplemental jurisdiction over Nelson's civil conspiracy and tortious interference claims. State courts have no interest in spending their limited time addressing claims that are hopelessly entangled with a federal claim. *Coe*, 162 F.3d at 496. In fact, we show greater respect to our colleagues in the Illinois judiciary by not punting to them the tasks of, first, reviewing the ever-expanding record in these proceedings in order to evaluate Nelson's claims, and, second, trying to determine what claims that "stem from events that happened outside the bankruptcy context" the district court felt remained viable after the dismissal of Nelson's abuse of process claim. We have already undertaken these tasks and are unable to discern from Nelson's complaint any theories of liability that do not rely on RTI's allegedly improper bankruptcy filing. We doubt that the Illinois courts have a significant interest in repeating our analysis, especially since Nelson's claims of civil conspiracy and tortious interference neither raise "novel or complex issues of state law" nor "predominate" over federal issues. *See Montaño*, 375 F.3d at 601-02.

Mindful of the district court's general discretion to decline supplemental jurisdiction under § 1367(c), we nevertheless conclude, based on the entanglement between Nelson's federal and state-law claims and the federal-court investment in this litigation, that the court "crossed over the line" by remanding this case to the Illinois Circuit Court. *Id.* at 602.

Although we conclude that Nelson's federal and state-law claims are so entangled that the entire lawsuit should be resolved in federal court, it does not follow that the defendants necessarily prevail on the merits. True, the district court dismissed Nelson's federal abuse of process claim, and our discussion of the entanglement between that claim and Nelson's state-law claims might suggest that Nelson's entire complaint should be dismissed as well. But the district court's basis for dismissing the federal abuse of process claim was flawed. Judge Kocoras concluded that the bankruptcy court's statement that RTI filed for bankruptcy in good faith, as affirmed by Judge St. Eve, precluded Nelson's abuse of process claim. As we explained in our discussion of the *In re RTI* case, the bankruptcy court's good-faith language was dictum, and "[d]icta have no preclusive effect . . . only judgments do." *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992). So the district court should not have relied on the bankruptcy court's dictum to dismiss Nelson's abuse of process claim, and, on remand, the court should resolve Nelson's remaining state-law claims without regard to this dictum.

## IV.  Conclusion

In *In re RTI*, Nos. 08-1342 & 08-1443, we VACATE the judgment of the district court and REMAND with instructions to dismiss the appeal from the bankruptcy court as moot. In *Nelson v. Welch & CHSWC*, No. 08-2164, we REVERSE the district court's decision declining to

exercise supplemental jurisdiction over Nelson's state-law claims and REMAND for further proceedings consistent with this opinion.